1

2

3

4

5

6

7

8   **UNITED STATES DISTRICT COURT**

9   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  MARCUS BOVARIE,                    )   Civil No. 06cv687 BEN (NLS)
                                       )
12          Plaintiff,                 )   **REPORT AND RECOMMENDATION**
    v.                                 )   **GRANTING IN PART AND DENYING**
13                                     )   **IN PART DEFENDANTS' MOTION TO**
    JAMES E. TILTON, et al.            )   **DISMISS THE SECOND AMENDED**
14                                     )   **COMPLAINT AND DENYING**
            Defendants.               )   **PLAINTIFF'S REQUEST FOR ENTRY**
15  _____)   **OF DEFAULT**

16                                         [Doc. Nos. 40, 46]

17          Marcus Bovarie (Plaintiff), a California prisoner proceeding *pro se*, filed a Second Amended

18  Complaint under 42 U.S.C. § 1983, on December 7, 2006. Plaintiff filed his Second Amended

19  Complaint (SAC) against several defendants who are currently officials at Centinela State Prison

20  (Defendants). In his SAC, Plaintiff alleges that Defendants have denied and continue to deny him his

21  constitutional right of access to the courts. Before the Court is (1) Plaintiff's SAC [Doc. No. 16], (2)

22  Defendants' motion to dismiss the SAC [Doc. No. 40] (Mem. P. & A.), (3) Plaintiff's Opposition [Doc.

23  No. 41] (Opp'n), and (4) Defendants' reply brief [Doc. No. 44] (Reply).  For the reasons outlined below,

24  this Court **RECOMMENDS** the Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

25                          *__Procedural History__*

26          Plaintiff filed his original complaint on March 28, 2006. Judge Benitez dismissed Plaintiff's

27  complaint without prejudice for failing to pay the $350 filing fee mandated by 28 U.S.C. § 1914(a). (*See*

28  *June 28, 2006 Order by Dist. Judge Roger T. Benitez* at 3:3-4 [Doc. No. 3].) Plaintiff filed his first

amended complaint adding two new defendants on July 20, 2006. [Doc. No. 7.] Judge Benitez granted Plaintiff's motion for leave to file a second amended complaint to add two additional defendants. (*See Nov. 9, 2006 Order by Dist. Judge Roger T. Benitez* at 15:4-5 [Doc. No. 15].) Plaintiff filed his second amended complaint on December 7, 2006. [Doc. No. 16.] Defendants filed the instant motion to dismiss on April 4, 2007. [Doc. No. 40.]

### *Background*

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the amended complaint and must construe the amended complaint, and all reasonable inferences drawn from it, in the light most favorable to the plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

**The Law Library**

Plaintiff is an inmate committed to the custody of the California Department of Corrections (CDC). Plaintiff is currently housed at the Centinela State Prison (Centinela) in Imperial, California. In his SAC, Plaintiff alleges that Centinela and CDC authorities, operations, and procedures, have denied him his constitutional right of access to the courts on a "substantial and continuous basis since 2002." (SAC p. 10.) According to Plaintiff, access to the law library is extremely limited for several reasons. First, two prison facilities consisting of twenty-four hundred inmates share one low-capacity, fifteen-person law library. (*Id.* at 10.) If the law library opens, it opens only for two, two-hour sessions per day. (*Id.*) Further, the law library is negligently supervised. (*Id.*) Finally, even during "normal program" or prison operations, access is inadequate even with an "approved deadline," or one that a court issues and the law library approves. (*Id.*)

During "lockdowns" or "modified programs," access to the law library may not exist. (SAC p. 10.) These conditions are frequent, if not more common, than normal program conditions existing at the prison. (*Id.*) During these times, a prisoner may not gain access to the law library at all unless he has an approved court deadline. (*Id.*)

**Plaintiff's Court Actions**

Plaintiff says he has been a habeas petitioner since 2003. (SAC p. 11.) While he only generally alludes to his habeas petition in the lower state courts, he provided documentation that he filed a habeas

petition with the California Supreme Court on February 3, 2004.  (SAC Ex. B.)

Plaintiff alleges he did not have time to file a habeas petition in federal court because prison officials failed to recognize the one-year statute of limitations under the Anti-Terrorism and Effective Death Penalty Act (AEDPA) and severely limited his time to access the law library while the statute of limitations was pending. (SAC p. 11, Ex. C pp.40-41.)

Separate from this action, Plaintiff filed another section 1983 civil rights complaint in this Court, case no. 04cv2385 JM (WMC). After granting Plaintiff *in forma pauperis* status, the Court dismissed the complaint without prejudice and with leave to amend for failure to state a claim. (*Id.*) Next Plaintiff filed a first amended complaint (FAC), which the Court dismissed without prejudice on March 1, 2006, for failure to exhaust administrative remedies. Judge Miller dismissed the FAC without leave to amend and terminated the case. Plaintiff then filed a second amended complaint on June 16, 2006. On July 27, 2007, Judge Miller dismissed Plaintiff's second amended complaint and confirmed that the case had been terminated.

**Access to the Law Library**

Plaintiff alleges that his law library access consisted of nine, two-hour sessions in all of 2005, for a total of eighteen hours. (SAC p. 14.) He says that even when prison officials recognize an approved deadline, they often still deny Plaintiff access to the law library. (*Id.* at 12.) Plaintiff also alleges that when he is allowed access to the law library, it is usually on the weekends and thus he must choose between using the law library and receiving visitors. (*Id.* at 11-12.)

Plaintiff specifies time blocks during which he was not permitted access even though he was under the AEDPA statute of limitations. These periods include: (1) five months ending 11/13/04; (2) three months between 4/16/05 and 7/9/05; (3) three months between 7/9/05 and 10/13/05; and (4) two months between 10/20/05 and 12/15/05. (*Id*. at 14-15.) Plaintiff alleges he submitted a 602 inmate appeal regarding these issues that several CDC defendants denied at all levels. (SAC Exs. A2, A3, A4.)

**The Defendants**

Plaintiff filed his SAC against defendants employed by the CDC. Defendant J. Tilton, Secretary of the CDC, is responsible "for all operations and policies . . . ." (SAC p. 2.) Defendants J. Woodford, J. Dovey, Broderick, and R. Hickman, Directors of the CDC, are "responsible for all operations and

1   policies . . . ." (*Id.* at 2-3.) Defendants J. Burleson, V. Alamager, J. Salazar, G. Giurbino, and J.

2   Gonzalez, Wardens of Centinela, are "responsible for all operations and policies . . . ." (*Id.* at 4-5.)

3   Defendants J. Denault, R. Darr and N. Grannis, Lieutenants of Centinela, are "responsible for operations

4   and policies for facility D including law library access . . . ." (*Id.* at 5.) Defendants A. Hernandez, J.

5   Cortez, J. Napolitano, and P. Kuzil-Buan, Facility D Captains, are "responsib[le] for policies and

6   operations on Facility D . . . ." (*Id.* at 6-7.) Defendant Z. Stienhaus is the Supervisor of Vocational

7   Instruction. Defendants M. Cullors, Head of Education, R. Pitones, Senior Law Librarian, and P.

8   Anchondo, Law Librarian, are "responsibl[e] for the law library . . . ." (*Id.* at 7, 8.)

9          Defendants filed the motion to dismiss on behalf of Tilton, Woodford, Dovey, Hickman,

10  Alamager, Salazar, Giurbino, J. Gonzalez, Denault, Grannis, Hernandez, Cortez, Napolitano, Kuzil-

11  Buan, Stienhaus, Cullors and Pitones.  They did not file on behalf of named defendants Broderick,

12  Burleson or Darr.

13  **<u>Plaintiff's Damages</u>**

14         Plaintiff alleges that the almost complete denial of access to the law library has destroyed his

15  ability to "achieve any semblance of a full and fair litigation." (SAC p. 15.) He says he has been forced

16  to submit legal work that is "flawed, partial, barely researched, and ineffective." (*Id.*) His legal work,

17  including his direct appeal, petition for writ of habeas corpus, and this civil rights complaint have been

18  compromised due to inadequate access to the law library. (*Id.*) For example, by the time Plaintiff was

19  able to identify issues for direct appeal, the appeal had already been denied. (*Id.*) Further, Plaintiff

20  alleges that he was forced to abandon many issues for his petition for review to the Supreme Court of

21  California due to lack of access to the law library. (*Id.*) Plaintiff says his state habeas petition was

22  denied throughout the state courts because of insufficient access to the law library. (*Id.*)

23         Plaintiff alleges that this civil rights complaint was dismissed twice – once for failure to state a

24  claim and once for failure to exhaust administrative remedies – because of lack of access to the law

25  library. (*Id.* at 16-17.) Finally, Plaintiff contends that due to his lack of access to the law library, he has

26  not been able to pursue additional causes of action such as those concerning confinement. (*Id.* at 17.)

27  Plaintiff states that the "stress, frustration, despair, and emotional distress" from not being able to

28  "present [his] case properly . . . has caused [him] to suffer from severe migraine headaches . . . a very

1  irregular heartbeat, . . . extreme anxiety, a sense of constant immense pressure, and an inability to sleep

2  most nights." (*Id.* at 18.)

3  ***Discussion***

4  **I.  Standards of Review**

5  **A. Rule 12(b)(6)**

6  Defendants move to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6)[1]. A motion

7  to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block*, 250

8  F.3d 729, 732 (9th Cir. 2001); *see* Fed. R. Civ. P. 12(b)(6). In deciding such a motion, all material

9  factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn

10  from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). Dismissal is proper only

11  where there is no cognizable legal theory or an absence of sufficient facts alleged to support a

12  cognizable legal theory. *Navarro*, 250 F.3d at 732 (citation omitted).

13  **B. Pro Se Litigants**

14  When the plaintiff is appearing *pro se*, the court must construe the pleadings liberally and afford

15  the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (2002) (citation omitted).

16  This rule of liberal construction is "particularly important" in civil rights cases. *Ferdik v. Bonzelet*, 963

17  F.2d 1258, 1261 (9th Cir. 1992). In giving liberal interpretation to a *pro se* civil rights complaint,

18  however, the court is not permitted to "supply essential elements of the claim that were not initially

19  pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). At a minimum,

20  the pro se plaintiff "must allege with at least some degree of particularity overt acts which defendants

21  engaged in that support [his] claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649

22  (9th Cir. 1984).

23  **C. 42 U.S.C. § 1983**

24  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

25  vindicating federal rights elsewhere conferred.'" *Graham v. Connor,* 490 U.S. 386, 393-94 (1989)

26  (quotation omitted). A section 1983 claim must allege: (1) a violation of rights protected by the

27

28  _____

[1]Unless otherwise noted, all future references to "Rule(s)" reference the Federal Rules of Civil Procedure.

1  Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting

2  under color of state law." *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991). To prevail, a

3  claimant must prove that: (1) a person acting under color of state law committed the conduct at issue,

4  and (2) the conduct deprived the claimant of some right, privilege, or immunity protected by the

5  Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535

6  (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v.*

7  *Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

8  **II.  Defendants' Fed. R. Civ. P. 12(b)(6) Motion**

9      Defendants seek dismissal of Plaintiff's SAC on the grounds that: (1) the Eleventh Amendment

10  bars Plaintiff's claim for monetary damages against Defendants in their official capacities; (2) Plaintiff's

11  allegations are insufficient to state a claim for violation of Plaintiff's right of access to the court; and (3)

12  Defendants are entitled to qualified immunity.

13      **A.  *Eleventh Amendment***

14      Plaintiff sues Defendants in both their official and individual capacities. (SAC p. 2-8.)

15  Defendants argue that the Eleventh Amendment bars section 1983 suits for damages against state

16  officials sued in their official capacities. (Mem. P. & A. p. 3.)

17      The Eleventh Amendment prohibits damage actions against state officials acting in their official

18  capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989). The Eleventh

19  Amendment, however, "does not bar actions against state officers in their official capacities if the

20  plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen*, 886 F.2d 247, 252

21  (9th Cir. 1989) (internal quotations omitted); *see Ex Parte Young*, 209 U.S. 123, 155-56 (1908). Nor

22  does it bar damage actions against state officials in their personal capacities. *See Hafer v. Melo*, 502

23  U.S. 21, 31 (1991). The Eleventh Amendment prohibits only damage actions against the "official's

24  office" – actions that are in reality suits against the state itself – rather than against its individual

25  officials. *See id*. at 26; *Will*, 491 U.S. at 71; *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).

26      Plaintiff did not expressly request injunctive relief in his original complaint, First Amended

27  Complaint, or SAC; he only requested compensatory and punitive damages. (SAC, p. 21.) In his

28  Opposition, however, Plaintiff says he is not pursuing money damages against Defendants in their

official capacities. He states that naming Defendants in their official capacities "gives notice" that a jury may impose injunctive relief against defendants in their official capacity. (Opp'n p. 5.)

This Court finds that Plaintiff does not adequately allege that he seeks declaratory or injunctive relief against Defendants in their official capacities. Therefore, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claims for money damages against Defendants in their official capacities be **GRANTED**. As this is Plaintiff's first notice that these claims are deficient, the Court recommends that Plaintiff be granted leave to amend to seek declaratory or injunctive relief against Defendants in their official capacity.

### B. *Sufficiency of Plaintiff's Claims*

#### 1.    *Access to Courts*

##### a.       Constitutional right.

Prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey,* 518 U.S. 343, 346 (1996); *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures); *Vandelft v. Moses,* 31 F.3d 794, 796 (9th Cir. 1994); *Ching v. Lewis,* 895 F.2d 608, 609 (9th Cir. 1989) (per curiam). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828; *see also Madrid v. Gomez,* 190 F.3d 990, 995 (9th Cir. 1999); *Keenan v. Hall,* 83 F.3d 1083, 1093-94 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). The right, however, "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts . . . . [It is this capability,] rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Lewis,* 518 U.S. at 356-57. Prison officials may select what they judge is the best method to ensure that prisoners will have the capability to file suit. *See id.* at 356. Prisons "might replace libraries with some minimal access to legal advice and a system of court-provided forms . . . that asked inmates to provide only the facts and not to attempt any legal analysis." *Id.* at 352.

/ / /

The right of access to the courts is only a right to bring complaints to the federal court and not a right to discover such claims or to litigate them effectively once filed with a court. *See Lewis,* 518 U.S. at 354-55; *Madrid,* 190 F.3d at 995; *Cornett v. Donovan,* 51 F.3d 894, 898 (9th Cir. 1995) ("[W]e conclude the Supreme Court has clearly stated that the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action."). The right of access to courts also applies to prison grievance proceedings. *See Bradley,* 64 F.3d at 1279. The right of access is only guaranteed for certain types of claims: (1) direct and collateral attacks upon a conviction or sentence, and (2) civil rights actions challenging the conditions of confinement. *Lewis*, 518 U.S. at 354.

### b.    Pleading an access to courts claim.

Prison officials who deliberately deny an inmate access to a legitimate means to petition for redress of grievances by hindering his litigation may violate the prisoner's constitutionally protected right to access to the courts. *Lewis* 518 U.S. at 351-55 (1996); *Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994). To state a claim for denial of access to the courts, Plaintiff must allege a specific actual injury involving a non-frivolous direct appeal, habeas corpus proceeding or section1983 action. *See Lewis*, 518 U.S. at 351-52, 353 n.3, 353-5; *Madrid,* 190 F.3d at 995.

An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis,* 518 U.S. at 348 (internal quotations omitted); *see also Madrid,* 190 F.3d at 996; *Keenan,* 83 F.3d at 1094; *Vandelft,* 31 F.3d at 796*; Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir. 1990) (per curiam). To establish actual injury, a plaintiff "need not show, ex post, that he would have been successful on the merits had his claim been considered." *Allen v. Sakai*, 48 F.3d 1082, 1085 (9th Cir. 1994). Delays in providing legal materials or assistance that result in actual injury, however, are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis,* 518 U.S. at 362.

Claims for denial of access to the courts may arise from the frustration or hindrances of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412-415 (2002). For a backward-looking claim such as that at issue here, plaintiff "must show: (1) the loss of a

1    'nonfrivolous' or 'arguable' underlying claim; (2) the official acts frustrating the litigation; and (3) a

2    remedy that may be awarded as recompense but that is not otherwise available in a future suit." *Phillips*

3    *v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007).

4          The first element requires that plaintiff show he suffered an "actual injury" by being shut out of

5    court. *Christopher*, 536 U.S. at 415; *Lewis*, 518 U.S. at 351; *Phillips*, 477 F.3d at 1076. The second

6    element requires that plaintiff show defendant proximately caused the alleged violation of plaintiff's

7    rights, "[t]he touchstone . . . [for which] is foreseeability." *Phillips* at 1077. Finally, the third element

8    requires that plaintiff show he has no other remedy than the relief available via this suit for denial of

9    access to the courts. *Id.* at 1078-79.

10                    *2. Personal Involvement and Causation*

11               a.      **Allegations of Defendants' gross negligence.**

12          Defendants argue that Plaintiff alleges no specific facts as to how each Defendant violated his

13    right to access the courts. A person subjects another to the deprivation of a constitutional right, within

14    the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or

15    omits to perform an act which he is legally required to do that causes the deprivation. *Johnson v. Duffy*,

16    588 F.2d 740, 743 (9th Cir. 1978) (citations and internal quotations omitted). Anyone who causes any

17    citizen to be subjected to a constitutional deprivation is also liable. *Id*. The requisite causal connection

18    can be established not only by some kind of direct personal participation in the deprivation, but also by

19    setting in motion a series of acts by others which the actor knows or reasonably should know would

20    cause others to inflict the constitutional injury. *Id*. 743-44.

21          Defendants, citing *Daniels v. Williams*, 474 U.S. 327, 331-32 (1986), argue that Plaintiff's

22    allegations of Defendants' gross negligence in supervision and duty is insufficient to support a civil

23    rights claim under 42 U.S.C. § 1983. The Court in *Daniels* reviewed a prisoner's claim that prison

24    officials had violated his due process rights by negligently leaving pillows on prison stairs on which the

25    prisoner stumbled and injured himself. *Id*. at 331. The Court held that more than negligence is required

26    for due process violations to be actionable under section 1983. *Id*. The Court reasoned that the Due

27    Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of

28    government," and "to prevent governmental power from being 'used for purposes of oppression . . . '"

1    *Daniels*, 474 U.S. at 331 (quotations omitted). The *Daniels* Court, however, reserved the question of

2    whether something less than intentional conduct, such as recklessness or gross negligence, is enough to

3    trigger the protections of the Due Process Clause." *Id.* at 334 n.3.

4        Here, Plaintiff claims that Defendants acted with gross negligence resulting in Plaintiff being

5    denied access to the courts. Defendant's actions allegedly involve an element of abuse of power and

6    their conduct may be more than mere negligence. Therefore, *Daniels* does not bar Plaintiff's claims. The

7    rationale underlying *Daniels* ' bar of negligence-based section 1983 claims is that mere lack of due care,

8    such as leaving a pillow on the prison stairs, is "quite remote" from the Fourteenth Amendment's

9    purpose of redressing abuses of power by state officials. 474 U.S. at 332. Here, the Court

10    **RECOMMENDS** finding that the facts Plaintiff put at issue – that Defendants made, enforced, and

11    allowed policies that resulted in Plaintiff being denied access to the courts – support a claim that may

12    amount to more than negligence.

13        **b.**      **Allegations against defendants involved in prison appeal system.**

14        Defendants Stienhaus (Supervisor of Vocational Instruction), Gonzalez (Associate Warden),

15    Burleson (Appeals Examiner), and Salazar (Warden) move to dismiss for failure to state a claim on the

16    additional ground that there is no constitutional right to a prison inmate appeal system. (Mem. P. & A. p.

17    5.) Plaintiff, however, does not claim that he has a constitutional right to a prison inmate appeal system.

18    Plaintiff's claim is that these Defendants contributed to Plaintiff's denial of access to the courts. Plaintiff

19    states that these Defendants "were made aware of the blatant constitutional violations and the damage

20    being caused by said violations" and they did "nothing to remedy the situation." (Opp'n p. 7.) The Court

21    **RECOMMENDS** finding that the allegations against Stienhaus, Gonzalez, Burleson and Salazar allege

22    conduct that is actionable under the Due Process Clause.

23        ***3. Plaintiff's Injuries:  Underlying Causes of Action***

24        **a. Plaintiff's state habeas corpus petition.**

25        Plaintiff filed a habeas petition in California Supreme Court on February, 3, 2004. (SAC Ex. B.)

26    On December 1, 2004, in an *en banc* hearing, that court denied Plaintiff's habeas petition. (*Id.*) Plaintiff

27    alleges that he was forced to abandon many issues for his petition for review to the Supreme Court of

28    California due to lack of access to the law library. (SAC, p. 16.) He also alleges that his writ of habeas

1   corpus was also denied throughout the state courts because of insufficient access to the law library. (*Id.*)

2   Plaintiff, however, does not allege the Defendant's actions caused the specific results he received

3   in the state habeas proceedings.  For example, Plaintiff does not allege that the state courts denied his

4   habeas petition for a reason such as untimeliness. Also, the record does not indicate why the state court

5   denied Plaintiff's claims. Finally, Plaintiff does not allege that the claims he was forced to abandon at

6   the California Supreme Court level were non-frivolous. Therefore, the Court finds that Plaintiff failed to

7   allege that he suffered an actual injury from denial of the state habeas petition or indicate a clear cause-

8   and-effect between Defendants' actions and his loss of opportunity to litigate. This Court

9   **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED** for Plaintiff's failure to state a

10   claim for injury from the state habeas petition. As this is Plaintiff's first notice of this deficiency, the

11   Court recommends that Plaintiff be granted leave to amend the SAC.

12   **b. Plaintiff's attempt to file a federal habeas petition.**

13   In Exhibit C to the SAC, Plaintiff explains that the time limit to file his habeas petition had been

14   used up and that he had to file a civil rights complaint to obtain relief. (SAC, Ex. C, pp.40-41.) He opted

15   to file a civil rights complaint rather than file a federal habeas petition with almost no supporting federal

16   cases. (*Id.*)

17   Plaintiff does not allege that he was completely shut out of federal court; he says that he would

18   not have been able to include federal cases in his petition. Further, Plaintiff never alleges that his

19   proposed federal habeas claims were non-frivolous. Therefore, this Court **RECOMMENDS** that

20   Defendants' Motion to Dismiss be **GRANTED** for Plaintiff's failure to state a claim for injury from his

21   inability to file a federal habeas petition. As this is Plaintiff's first notice of this deficiency, the Court

22   recommends that Plaintiff be granted leave to amend the SAC.

23   **c. Plaintiff's section 1983 complaint.**

24   As previously stated, Plaintiff filed a different section 1983 complaint in this court – case no.

25   04cv2385 JM (WMC) – under 42 U.S.C. § 1983 on November 24, 2004.[2] (SAC Ex. E.) On July 27,

26   2007, Judge Miller dismissed Plaintiff's second amended complaint and confirmed that the case had

27

28   [2]The Court takes judicial notice of the docket for this action, case no. 04cv2385 JM (WMC). *See*
Fed. R. Evid. 201.

1   been terminated. Plaintiff alleges that his complaint had been dismissed twice – once for failure to state

2   a claim and once for failure to exhaust administrative remedies – because of lack of access to the law

3   library. (*Id.* at 16-17.)

4        At the pleading stage, general factual allegations of injury resulting from the defendant's conduct

5   may withstand a motion to dismiss because the general allegations embrace the specific facts necessary

6   to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted). The

7   Court finds that Plaintiff has adequately alleged that he pleaded a nonfrivolous section 1983 action as

8   required by *Lewis* and that he has properly alleged he has suffered an actual injury. Therefore, in regards

9   to Plaintiff's underlying section 1983 complaint, this Court **RECOMMENDS** that Defendants' Motion

10  to Dismiss by **DENIED**.

11      ### *C. Qualified Immunity*

12       Qualified immunity entitles government officials to "an *immunity from suit* rather than a mere

13  defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted

14  to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Qualified immunity

15  shields government officials "from liability for civil damages insofar as their conduct does not violate

16  clearly established statutory or constitutional rights of which a reasonable person would have known."

17  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Generally, the qualified immunity

18  doctrine must "'give[] ample room for mistaken judgments by protecting 'all but the plainly

19  incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

20  "Therefore, regardless of whether a constitutional violation occurred, the officer should prevail if the

21  right asserted by the plaintiff was not 'clearly established' or the officer could have reasonably believed

22  that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

23       To analyze a qualified immunity claim, a court must first determine whether, taken in the light

24  most favorable to the party asserting the injury, the facts show that the defendants violated the

25  claimant's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is no, the

26  analysis ends. If the answer is yes, the court must then consider whether the defendants are entitled to

27  qualified immunity. *See id.* at 201; *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (en

28  banc). If the Court finds that the facts taken in light most favorable to Plaintiff show that Defendants did

06cv687 BEN (NLS)

1  violate Plaintiff's constitutional rights, "the next, sequential step is to ask whether the right was clearly

2  established." *Saucier*, 533 U.S. at 201. The "salient question" is whether the state of the law at the time

3  gives officials "fair warning" that their conduct is unconstitutional. *Hope*, 536 U.S. 730, 740 (2002). The

4  relevant inquiry focuses on "what the officer reasonably understood his powers and responsibilities to

5  be, when he acted, under clearly established standards." *Saucier*, 533 U.S. at 208. The plaintiff bears the

6  burden of proving that the right allegedly violated was clearly established at the time of the violation.

7  *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

8      Here, Plaintiff has adequately alleged an access to courts claim based on his underlying section

9  1983 action.  During the time Plaintiff was incarcerated in Centinela State Prison, an inmate's right to

10  law library access was clearly established by existing case law. The question, however, of whether any

11  or all of the Defendants could reasonably have believed that their conduct was lawful is more properly

12  resolved on a motion for summary judgment or at trial, when Defendants are entitled to present evidence

13  on their behalf and the Court may properly consider such evidence.  Thus, for the purposes of the instant

14  motion, the Court cannot resolve the issue of whether any or all of the Defendants is entitled to qualified

15  immunity.  Therefore, the Court **RECOMMENDS** that Defendants' claim that they are entitled to

16  qualified immunity be **DENIED without** prejudice.

17          **E. *Defendants Broderick, Burleson and Darr***

18      Defendants did not respond on behalf of defendants Broderick, Burleson and Darr. Plaintiff filed

19  a request to enter default against all defendants who have not yet responded. [Doc. No. 46.]

20      According to the docket, Plaintiff never attempted to serve Broderick with the complaint. Also,

21  the waiver of service was never served on Burleson. [Doc. No. 19.] Therefore, neither Broderick nor

22  Burleson have been brought in to this action and were not obligated to respond to the complaint.

23      The complaint, however, was served on defendant Darr. Darr returned a waiver of service on

24  March 3, 2007. His response was due May 8, 2007. [Doc. No. 36.] Darr is the only served defendant

25  who has not responded to the SAC. Because the Court is dismissing the complaint against the other

26  similarly situated served defendants for failure to state a claim, the Court *sua sponte* under 42 U.S.C. §

27  1915(e)(2)(B)ii), **RECOMMENDS** that Plaintiff's request for default be **DENIED**, that the SAC be

28  **DISMISSED** against Darr as it is against the other Defendants, and **ORDERS** Darr to respond to any

1  future pleading filed by plaintiff.

2  **III. <u>Motion to Strike Request for Punitive Damages</u>**

3       Finally, Defendants move to strike Plaintiff's prayer for punitive damages. Under Rule 12(f), the

4  Court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous

5  matter." A Rule 12(f) motion "avoid[s] the expenditure of time and money that must arise from

6  litigating spurious issues by dispensing with those issues prior to trial." *Bureerong v. Uvawas*, 922 F.

7  Supp. 1450, 1478 (N.D. Cal. 1996); *see also Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.

8  1993).

9       Punitive damages are available under section 1983. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499

10  U.S. 1, 17 (1991); *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). A jury may award them

11  even when the plaintiff cannot show compensable injury. *See Smith v. Wade*, 461 U.S. 30, 54, 55 n.21

12  (1983); *Davis v. Mason Co.*, 927 F.2d 1473, 1485 (9th Cir. 1991). The jury must find either that the

13  defendant acted with an evil motive or intent or demonstrated reckless indifference to the plaintiff's

14  constitutional rights. *See Smith*, 461 U.S. at 56.

15       Here, Plaintiff fails to expressly allege that Defendants acted maliciously or with reckless

16  indifference. Therefore, the Court **RECOMMENDS** that Defendants' motion to strike Plaintiff's prayer

17  for punitive damages be **GRANTED**. Because this is Plaintiff's first notice of this deficiency, this Court

18  recommends granting Plaintiff leave to amend to properly allege his claim for punitive damages.

19                              ***<u>CONCLUSION</u>***

20       For all of the above reasons, the Court recommends the following orders:

21       1.    Motion to dismiss Plaintiff's request for damages be **GRANTED** as to all Defendants in

22             their official capacities **with** leave to amend to seek declaratory or injunctive relief;

23       2.    Motion to dismiss for failure to state a claim based on injury from denial of underlying

24             state habeas petition be **GRANTED with** leave to amend;

25       3.    Motion to dismiss for failure to state a claim based on injury from inability to bring

26             federal habeas petition be **GRANTED with** leave to amend;

27       4.    Motion to dismiss for failure to state a claim based on injury from underlying section

28             1983 complaint be **DENIED**;

5.      Assertion of qualified immunity defense is **DENIED without** prejudice;

6.      Plaintiff's request for default be **DENIED** and that the Second Amended Complaint be **DISMISSED** against Darr as it is against the other Defendants; and

7.      Plaintiff's request for punitive damages be **STRICKEN with** leave to amend.

The undersigned Magistrate Judge submits this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than ***August 21, 2007*** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than ***August 31, 2007.*** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  July 30, 2007

Hon. Nita L. Stormes
U.S. Magistrate Judge