1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10
11 | MARCUS BOVARIE,                    )   Civil No.06cv687 JLS (NLS)

| | )
|                      Plaintiff,     )   **REPORT AND RECOMMENDATION**
12 | v.                                 )   **FOR ORDER GRANTING IN PART**
|                                    )   **AND DENYING IN PART**
13 | JAMES E. TILTON, et al.            )   **DEFENDANTS' MOTION TO DISMISS**
|                                    )   **THE FOURTH AMENDED**
14 |                      Defendants.   )   **COMPLAINT.**
|                                    )
15 | _____ )   [Doc. No. 100]

16        Marcus Bovarie (Plaintiff), a California prisoner proceeding pro se, filed a fourth amended

17 complaint (4AC) under 42 U.S.C. § 1983.  Defendants Cates, Tilton, Woodford, Hickman and Dovey

18 (Directors); Almager, Salazar and Giurbino (Wardens); Denault, Darr and Grannis (Lieutenants);

19 Hernandez, Cortez, Napolitano and Kuzil-Ruan (Captains); Cullors, Pitones and Anchondo (Library

20 Staff); Gonzalez (Associate Warden) and Steinhaus[1] (Supervisor of Vocational Instruction) filed a

21 motion to dismiss certain claims in the 4AC.

22        This case was initially filed over three years ago.  Plaintiff is on his fifth complaint in this case,

23 and with each new complaint, he has added more claims and/or defendants.  This order constitutes the

24 third Report and Recommendation in this case regarding the sufficiency of Plaintiff's pleadings.  After

25 having reviewed all papers filed in support of and in opposition to the motion, this court

26 **RECOMMENDS** that the motion to dismiss be **GRANTED in part** and **DENIED in part**.

27 _____

28        [1]While Steinhaus has joined this motion to dismiss, as explained in the discussion section of this
order, Steinhaus was never named a defendant in the 4AC.

## PROCEDURAL HISTORY

Plaintiff filed the initial complaint in this matter on March 28, 2006.  On June 28, 2006, District Judge Benitez dismissed the case without prejudice for failure to either pay the filing fee or file a motion to proceed in forma pauperis.  On July 20, 2006, Plaintiff moved to proceed in forma pauperis and filed a first amended complaint.  Plaintiff filed a motion to add new defendants on October 17, 2006.  On November 9, 2006, Judge Benitez issued an order allowing Plaintiff to proceed in forma pauperis and granting him leave to file a second amended complaint.  Plaintiff filed the second amended complaint on December 7, 2006, alleging that the defendants denied and had continued to deny him his constitutional right of access to the courts.

On April 7, 2007, Defendants Darr, Grannis, Woodford, Tilton, Napolitano, Cortez, Pitones, Anchondo, Kuzil-Ruan, Almager, Hickman, Dovey, Denault, Salazar, Hernandez, Giurbino, Gonzales, Steinhaus and Cullors filed a motion to dismiss the second amended complaint.  The undersigned issued a report and recommendation on July 30, 2007 regarding the motion.  On October 12, 2007, the case was transferred from District Judge Benitez to District Judge Sammartino.  Judge Sammartino issued an order on March 19, 2008 adopting in part and rejecting in part the report and recommendation.

Plaintiff filed his third amended complaint on May 19, 2008.  He alleged the same access to courts claim as in the second amended complaint and added Governor Schwarzenegger as a defendant. Defendants filed a motion to dismiss on behalf of Darr, Grannis, Woodford, Tilton, Napolitano, Cortez, Pitones, Anchondo, Kuzil-Ruan, Almager, Hickman, Dovey, Denault, Salazar, Hernandez, Giurbino, Gonzales, Steinhaus and Cullors on June 19, 2008 and filed a motion to dismiss on behalf of Schwarzenegger on August 26, 2008.  The undersigned issued a report and recommendation on the third amended complaint on November 4, 2008.  Judge Sammartino issued an order on March 30, 2009 adopting in part and rejecting in part the report and recommendation.

Plaintiff filed the 4AC on May 18, 2009.  He alleges the same access to courts claim as previously alleged and adds a claim for denial of his constitutional right to equal protection of the law. Plaintiff alleges these claims against all of the previously-named Defendants except for Steinhaus.  He also adds Matthew Cates and Michael Smelosky as defendants.  Defendants Darr, Grannis, Woodford, Tilton, Napolitano, Cortez, Pitones, Anchondo, Kuzil-Ruan, Almager, Hickman, Dovey, Denault,

1  Salazar, Hernandez, Giurbino, Gonzales, Steinhaus and Cullors filed a motion to dismiss the 4AC on

2  June 9, 2009.  Defendant Cates filed a notice of joinder to that motion on August 20, 2009.  The

3  undersigned took the motion under submission on August 26, 2009.

### FACTUAL BACKGROUND

5  **Plaintiff's Background.**

6        Plaintiff is in the custody of the California Department of Corrections and Rehabilitation

7  (CDCR) serving a twenty-two year sentence that began in late 2001.  4AC ¶ 37.  From 2002 to 2008 he

8  was housed at Centinela State Prison in Imperial, California (Centinela).  *Id.*  Since 2008, Plaintiff has

9  been residing at Avenal State Prison in Kings County, California (Avenal).  *Id.*  Plaintiff has been

10 attempting to challenge his conviction and sentence and the conditions of his confinement through civil

11 rights cases since 2002.  4AC ¶ 38.  In this action, Plaintiff seeks redress for violations of his rights to

12 access the courts and to equal protection of the law due to the policies, procedures and operations in

13 Centinela and Avenal regarding the law library.  4AC ¶ 40.

14 **The Second Amended Complaint and Order Addressing It.**

15       Plaintiff's second amended complaint (SAC) centered around his access to courts claim.  He

16 claimed that Defendants did not provide him with adequate access to the courts because the law library

17 had a very low capacity compared to the prison population and the library was open for extremely

18 limited time periods.  Plaintiff claimed that as a result, his legal work, including his direct appeal,

19 petition for writ of habeas corpus, and his civil rights complaints, had been compromised due to

20 inadequate access to the law library.

21       When ruling on Defendants' motion to dismiss the SAC, Judge Sammartino gave Plaintiff leave

22 to amend his complaint as to (1) his allegations against all Defendants in their official capacities; (2) his

23 access to courts claim based on injury regarding his state habeas petition and failure to file a federal

24 habeas petition; (3) his access to courts claim based on injury from the underlying § 1983 complaint as

25 to defendants Gonzalez and Steinhaus; and (4) his request for punitive damages.  Mar. 19, 2008 Order,

26 pp.12-13 [Dkt. No. 60].  Judge Sammartino also found that Plaintiff had adequately alleged an access to

27 courts claim against defendants Tilton, Woodford, Hickman, Dovey, Almager, Salazar, Giurbino,

28 Denault, Darr, Grannis, Hernandez, Cortez, Napolitano, Kuzil-Ruan, Cullor, Pitones and Anchondo

1   based on their deliberate indifference and causation of injury.

2   **The Third Amended Complaint and the Order Addressing It.**

3       Plaintiff realleged in the third amended complaint (TAC) his over-arching claim that Defendants

4   denied him access to the courts by denying him access to the law library on a substantial and continual

5   basis since 2002.  He attached several exhibits to the TAC that showed, among other things, his

6   administrative complaints, responses to those complaints and court orders regarding his case filings.  In

7   his opposition to Defendants' motion to dismiss the TAC, Plaintiff included many new allegations

8   regarding "backward looking" and "forward looking" claims that he sought to incorporate to his TAC.

9       In her order granting in part and denying in part Defendants' motion to dismiss the TAC, Judge

10  Sammartino denied the motion with respect to the Directors, Wardens, Lieutenants, Captains and

11  Library Staff.  Mar. 30, 2009 Order, pp.23 [Dkt. No. 94].  She found that Plaintiff adequately alleged

12  backward-looking claims against those Defendants pertaining *only* to his prior § 1983 action and the

13  insufficiency of evidence claim in the direct appeal.  *Id.* at 16, 23.   Judge Sammartino dismissed with

14  leave to amend all the other allegations related to backward-looking claims arising from Plaintiff's

15  direct appeal and state and federal habeas petitions that Plaintiff included in his opposition.  *Id.*  She said

16  that if Plaintiff made these same allegations in a 4AC, the only substantive issue for a motion to dismiss

17  would be whether these backward-looking claims are non-frivolous and arguable.  *Id.* at 16.

18      Judge Sammartino also granted the motion to dismiss all Plaintiff's forward-looking claims,

19  allowing Plaintiff leave to amend to state an access to courts claim based on potential conditions of

20  confinement claims.  *Id.* at 17, 24.  She said that if Plaintiff made these same allegations in a 4AC, the

21  only substantive issue for a motion to dismiss would be whether these forward-looking claims are non-

22  frivolous and arguable.  *Id.* at 17.  Further, Judge Sammartino dismissed without prejudice Plaintiff's

23  access to courts claim based on his pending Ninth Circuit appeal and this § 1983 action until the appeal

24  and this action are adjudicated.  *Id.* at 19, 24.

25      As to the specific Defendants, Judge Sammartino dismissed Governor Schwarzenegger from the

26  suit on the basis of qualified immunity.  *Id.* at 23.  She dismissed Plaintiff's claims without prejudice

27  against defendants Salazar and Gonzalez with respect to their actions as hearing officers.  *Id.*  But she

28  kept those Defendants in the case with respect to their alleged negligence in performing their

responsibilities as Warden and Associate Warden, respectively.  *Id.*  Judge Sammartino dismissed

without prejudice the claims against defendant Steinhaus.  *Id.* at 24.  She also found that Plaintiff

adequately plead "reckless indifference" with respect to his request for punitive damages.  *Id.*

**The Fourth Amended Complaint.**

In the 4AC Plaintiff realleges his access to courts claim.  4AC ¶ 1.  He also adds a claim for

violation of his constitutional right to equal protection of the law.  4AC ¶ 1.  Plaintiff served the

following Defendants with the 4AC: Cates, Tilton, Woodford, Dovey and Hickman (Directors);

Smelosky, Almager, Salazar and Giurbino (Wardens); Gonzalez (Associate Warden); Hernandez,

Cortez, Napolitano and Kuzil-Ruan (Captains); Denault, Darr and Grannis (Lieutenants); Cullors,

Pitones and Anchondo (Library Staff).  4AC ¶¶ 4-25.[2]  Plaintiff sues all Defendants in their official and

individual capacities.  4AC ¶¶ 4-25.

**1.      The Law Libraries.**

Plaintiff alleges that the law libraries at Centinela and Avenal are constitutionally inadequate

because they serve a large number of inmates such that the facilities are virtually non-accessible.

At Centinela, the A and B facilities share a law library and the C and D facilities share a law

library.  4AC ¶ 41.  Over 2400 inmates share access to each 15-person capacity law library.  *Id.*  If the

law library opens, it opens only for two, two-hour sessions per day.  *Id.*  During "normal program" or

prison operations, access is inadequate even with an "approved deadline" that the law library approves.

*Id.* Access may be non-existent during "lockdowns" or "modified programs."  4AC ¶¶ 41-42.  These

conditions are frequent, if not more common, than normal program conditions existing at the prison.

4AC ¶ 42.  During these times, a prisoner may not gain access to the law library at all unless he has an

approved court deadline.  *Id.*

For all of 2005, Plaintiff was allowed law library access at Centinela for nine, two-hour sessions,

all while he was under the Anti-Terrorism and Effective Death Penalty Act (AEDPA) deadline.  4AC ¶

46.  When he is allowed access to the law library, it is usually on the weekends and Plaintiff must

choose between using the law library and receiving visitors.  4AC ¶ 44.  Plaintiff specifies the time

---

[2]Alameida, a former director of the CDCR, was named as a defendant but never served. *See* 4AC
¶ 8.  Smelosky, a former warden, was served but has not yet responded to the 4AC.

1   blocks during which he was not permitted any access at Centinela even though he was under the

2   AEDPA statute of limitations and regularly submitted access slips. These periods include: (1) five

3   months ending November 13, 2004; (2) April 16, 2005 to July 9, 2005; (3) July 9, 2005 to October 13,

4   2005; and (4) October 20, 2005 to December 15, 2005.  4AC ¶ 47.

5          Avenal houses approximately 6,500 inmates in six yards and provides one law library.  4AC ¶

6   50.  Only one yard can use the law library at a time.  *Id.*  When a two-hour session is allowed, the first

7   half-hour is normally spent waiting for an escort.  4AC ¶ 51.

8                  **2.      Plaintiff's Court Actions on Direct Appeal and For Habeas Review.**

9          Plaintiff filed a direct appeal.  4AC ¶ 58.  He was represented by counsel on appeal.  4AC ¶ 56,

10  Claims 12, 20; ¶ 60; ¶ 64.  The appeal contained only an insufficiency of evidence claim.  4AC ¶ 58.

11  Defendants prevented Plaintiff from asserting 20 non-frivolous claims on appeal.  *Id*; ¶ 57.  The direct

12  appeal was denied due to Plaintiff's alleged denial of law library access.  *Id.*

13         Plaintiff filed a petition for review with the California Supreme Court that contained six claims,

14  including the insufficiency of evidence claim.  4AC ¶ 59.  Defendants prevented Plaintiff from asserting

15  15 non-frivolous claims in the petition and rendered meaningless the presentation of the six claims he

16  did include.  *Id*; ¶ 57.  The petition for review was denied due to Plaintiff's alleged denial of law library

17  access.  *Id.*

18         Plaintiff has been a habeas petitioner since 2003.  4AC ¶ 43.  He filed two habeas petitions with

19  the Ventura Superior Court that together contained six claims.  4AC ¶ 60.  Defendants prevented

20  Plaintiff from asserting 15 non-frivolous claims for habeas review and rendered meaningless the

21  presentation of the six claims he did include.  *Id*; ¶ 57.  The habeas petitions were denied due to

22  Plaintiff's alleged denial of law library access.  *Id.*

23         Plaintiff filed a habeas petition that included seven claims with the Court of Appeal, Second

24  District.  4AC ¶ 61.  Defendants prevented Plaintiff from asserting 16 non-frivolous claims for habeas

25  review and rendered meaningless the presentation of the seven claims he did include.  *Id*; ¶ 57.  The

26  habeas petition was denied due to Plaintiff's alleged denial of law library access.  *Id.*

27         Plaintiff filed a habeas petition with the California Supreme Court that contained nine claims.

28  4AC ¶ 62.  Defendants prevented Plaintiff from asserting 14 non-frivolous claims for habeas review and

1  rendered meaningless the presentation of the nine claims he did include.  *Id*; ¶ 57.  The habeas petition

2  was denied due to Plaintiff's alleged denial of law library access.  *Id.*

3       Plaintiff filed a habeas petition in the federal court for the Central District of California.  4AC ¶

4  63.  He filed a traverse, amended pleading, objections to the Magistrate Judge's report and

5  recommendation and application for certificate of appealability in support of that petition.  *Id.*

6  Considering all his documents, Plaintiff's habeas petition contained 12 claims.  *Id.*  Defendants

7  prevented Plaintiff from asserting 13 non-frivolous claims for habeas review and rendered meaningless

8  the presentation of the 12 claims he did include.  *Id*; ¶ 57.  The habeas petition was denied due to

9  Plaintiff's alleged denial of law library access.  *Id.*

10       Plaintiff lists the following "twenty non-frivolous direct appeal/habeas claims regarding his

11  criminal trial, conviction and sentence" that Plaintiff asserts he was either completely unable to present,

12  or to effectively present, as noted above.  4AC ¶ 56.

| | | |
|---|---|---|
| Claim 1. | Use of a firearm enhancement in sentencing was illegally imposed without the required specific finding of "use." |
| Claim 2. | Firearm enhancement in sentencing was illegally imposed without proof beyond a reasonable doubt of an actual firearm as defined by statute. |
| Claim 3. | Ineffective assistance of trial counsel due to his failure to contest the firearm enhancements. |
| Claim 4. | Ineffective assistance of trial counsel for entering these stipulations: "1) that DNA recovered from the ski mask did not match Plaintiff and, 2) the partial palm print 'perfectly-matched' Plaintiff." |
| Claim 5. | Ineffective assistance of trial counsel for agreeing to a bench trial while in possession of exculpatory DNA evidence. |
| Claim 6. | Plaintiff was improperly charged with a crime under California Penal Code § 209 "despite his eventual acquittal" of this charge. |
| Claim 7. | Dual use of firearm and prior convictions illegally aggravated and enhanced the sentence. |
| Claim 8. | There was no actual or constructive possession of the property taken from the victims to constitute robbery on four of the seven counts. |
| Claim 9. | Ineffective assistance of trial counsel for failure to argue that there was no actual or constructive possession of the property taken from the victims to constitute robbery on four of the seven counts. |

7

Claim 10.    Plaintiff did not waive a jury trial for the firearm enhancements.

Claim 11.    Improper charge for firearm enhancements that together violated Plaintiff's right to a determination of aggregate level of enhancement.

Claim 12.    Ineffective assistance of appellate counsel for her refusal to use exculpatory evidence on appeal.

Claim 13.    A weak case (the Ranch House robbery) was tried together with a stronger case (the Outback robbery) to obtain a conviction that would not otherwise be obtained.

Claim 14.    Ineffective assistance of trial counsel for failure to attempt to sever the two robberies for trial.

Claim 15.    Prosecution failed to disclose exculpatory DNA evidence by suppressing the effectiveness of the evidence.

Claim 16.    In light of the DNA evidence there is insufficient evidence to support a conviction for either robbery.

Claim 17.    Firearm enhancements were imposed without a finding of guilt beyond a reasonable doubt.

Claim 18.    No waiver of Plaintiff's *Apprendi* rights to allow judicial factfinding at sentencing of firearm use.

Claim 19.    No element of firearm enhancement was found.

Claim 20.    Ineffective assistance of appellate counsel for failure to raise any of the preceding nineteen claims.

### 3.    Plaintiff's Civil Rights Actions.

Separate from this action, Plaintiff filed another § 1983 civil rights complaint in this court, case no. 04cv2385 JM (WMC).  4AC ¶ 68.  After granting Plaintiff in forma pauperis status, the court dismissed the complaint without prejudice and with leave to amend for failure to state a claim.  4AC ¶ 68, Ex. F.  Plaintiff filed a first amended complaint. [04cv2385, Dkt. No. 9.][3]  Defendants filed a motion to dismiss.  [04cv2385, Dkt. No. 20.]  The district judge dismissed the first amended complaint for failure to exhaust administrative remedies.  [04cv2385, Dkt. No. 29.]  Plaintiff alleges the case was dismissed due to Plaintiff's alleged denial of law library access.  4AC ¶¶ 67, 68.

Plaintiff lists "nine non-frivolous § 1983 condition of confinement claims he has been prevented

---

[3]The court has already taken judicial notice of the docket for case no. 04cv2385 JM (WMC). *See* July 30, 2007 Report & Recommendation, p.11, n.2.

8

from filing."  4AC ¶ 65.

| | |
|---|---|
| § 1983 Claim 1. | Eighth amendment violation for Centinela's and CDCR's kitchen and food delivery systems that caused Plaintiff food poisoning. |
| § 1983 Claim 2. | Eighth amendment violation for Centinela's drinking water. |
| § 1983 Claim 3. | Eighth amendment violation for CDCR's computerized flush toilets that restrict flushes to two flushes per any five minute period. |
| § 1983 Claim 4. | Eighth amendment violation for denying Plaintiff medical care with regard to his degenerative joint condition. |
| § 1983 Claim 5. | Eighth amendment violation for denial of Plaintiff's medical care with regard to Centinela's medication refill procedures. |
| § 1983 Claim 6. | Eighth amendment violation for overcrowding of CDCR's prisons. |
| § 1983 Claim 7. | Eighth amendment violation for CDCR's lockdown policies. |
| § 1983 Claim 8. | First amendment retaliation claim regarding Centinela's response to this civil rights case, including harassment and destruction of legal mail. |
| § 1983 Claim 9. | Eighth amendment violation for condition of confinement that allows the maximum temperature to be as close to 90 degrees as possible, not including humidity. |

**4.     Defendants' Liability and Plaintiff's Damages.**

Plaintiff alleges his right to access the courts and equal protection rights were violated because Defendants engaged in a campaign of limiting his access to legal materials by "promulgating, encouraging, enforcing and allowing policies, procedures and operations that deny access to legal resources."  4AC ¶¶ 70-71.  Defendants Cates, Tilton, Woodford, Dovey and Hickman (Directors) were grossly negligent in their supervision and duty regarding the CDCR's law libraries and inmates' abilities to access them.  4AC ¶¶ 70-71.  They failed to supervise and provide adequate training, funding and policy for the CDCR's law libraries.  *Id.*  Defendants Smelosky, Almager, Salazar and Giurbino (Wardens) were grossly negligent in their supervision and duty regarding Centinela's law libraries and inmates' abilities to access them.  4AC ¶ 73.  They failed to supervise and provide adequate training, funding and policy for Centinela's law libraries.  *Id.*  Defendants Gonzalez, Hernandez, Cortez,

1  Napolitano, Kuzil-Ruan, Denault, Darr, Grannis, Cullors, Pitones and Anchondo (Associate Warden,

2  Captains, Lieutenants and Library Staff) were grossly negligent in their supervision and duty regarding

3  Centinela's law libraries and inmates' abilities to access them.  4AC ¶¶ 74-78.  They also failed to

4  provide adequate training and policy regarding Centinela's law libraries.  *Id.*

5  "Plaintiff's legalwork consists of non-frivolous claims regarding his conviction/sentence and §

6  1983 condition of confinement complaints."  4AC ¶ 87.  Defendants' denial of access to legal resources

7  has caused Plaintiff to suffer the following injuries: loss or hinderance of all his non-frivolous claims;

8  loss of relief for his non-frivolous claims; and longer confinement, loss of freedom, loss of income and

9  denial of medical care due to the loss of relief for his claims.  *Id.*

10  As a proximate result of Defendants' conduct, Plaintiff alleges he has suffered and continues to

11  suffer from stress, frustration, despair, anxiety and other emotional distress because "knowing each

12  deadline Plaintiff has, had or will have has expired or will expire without the provision of reasonable

13  access to legal resources is both physically and mentally debilitating."  4AC ¶ 91.  This stress has

14  caused Plaintiff to suffer from severe migraine headaches, a very irregular heartbeat and an inability to

15  sleep most nights.  *Id.*  Defendants have acted intentionally and with knowledge of Plaintiff's suffering,

16  with a deliberate indifference to Plaintiff's constitutional rights, and with a reckless or callous disregard

17  for those rights.  4AC ¶¶ 89, 90, 93.

18  **5.  Prayer for Relief.**

19  Plaintiff seeks this relief against Defendants: injunctive and declaratory relief; general damages;

20  special damages (including medical and legal fees); punitive damages; attorney's fees; costs; and for any

21  other relief the court deems proper.  4AC ¶ 94.

22  <u>**DISCUSSION**</u>

23  In support of the motion to dismiss, Defendants argue:

24  (1) They are immune from suit for monetary damages in their official capacities.

25  (2) Plaintiff fails to reallege any claims against Steinhaus.

26  (3) The 4AC fails to state a claim against Defendants for denial of access to the courts.  While

27  Defendants are mindful the court has previously ruled on this issue, they argue that in light of the

28  decision in *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009), "the allegations in the 4AC fall short

1  of the Supreme Court's recently clarified pleading requirements for a claim based on supervisory

2  liability." Mem. Ps&As, p.8.

3      (4) The 4AC fails to state a claim against Defendants for denial of access to the courts based on

4  the denial of Plaintiff's direct criminal appeal because he was represented by counsel; and

5      (5) The 4AC fails to state a claim against Defendants for denial of access to the courts based on

6  Plaintiff's inability to bring nine other civil rights claims (forward looking claims) because Plaintiff fails

7  to adequately describe those claims.

8      Defendants do not move to dismiss the 4AC based on the backward-looking claims arising from

9  Plaintiff's petition for review of his direct appeal, and state and federal habeas petitions, even though

10  Judge Sammartino said the "frivolousness" of those claims should be at issue in a 4AC.  Neither do

11  Defendants move to dismiss Plaintiff's newly-alleged equal protection claim.

12  **I.**    **Eleventh Amendment.**

13      In ruling on the motion to dismiss the TAC, Judge Sammartino dismissed claims for monetary

14  damages against Defendants in their official capacities. Mar. 30, 2009 Order, p.20.  In the 4AC,

15  Plaintiff names all Defendants in their official and individual capacities.  4AC ¶¶ 4-25.

16      Defendants argue that Plaintiff is barred from seeking money damages against state employees in

17  their official capacities under the eleventh amendment.  In his opposition, Plaintiff states there is no

18  eleventh amendment conflict because he sues Defendants for monetary damages only in their individual

19  capacities.

20      While the court appreciates that in the opposition, Plaintiff states he does not seek money

21  damages against Defendants in their official capacities, nothing in the 4AC identifies that choice.  Given

22  the eleventh amendment bar on damages actions against state employees acting in their official

23  capacities, and Plaintiff's failure to distinguish in the 4AC the damages he seeks against Defendants in

24  their different capacities, the court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's

25  claims for money damages against Defendants in their official capacities be **GRANTED**.  *See Will v.*

26  *Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10 (1989) (eleventh amendment prohibits damages

27  actions against state officials acting in their official capacities).

28  / / /

**II.    Defendant Steinhaus.**

Defendants argue Defendant Steinhaus should be dismissed because Plaintiff has not alleged any claims against him despite having been given leave to do so.  In the opposition, Plaintiff points out that he never named Steinhaus as a defendant in the 4AC.  Given that Steinhaus was not named as a defendant in the 4AC, the court **RECOMMENDS** that Defendants' motion to dismiss Steinhaus as a defendant be **DENIED as moot**.

**III.    Rule 12(b)(6) Motion.**

**A.    Legal Standard.**

A Rule 12(b)(6)[4] motion to dismiss tests the legal sufficiency of the plaintiff's claims.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  For the sake of deciding the motion, the court must accept as true all material allegations in the complaint, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  This tenet does not extend, however, to legal conclusions cast as factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Iqbal*, 556 U.S. ___, 129 S.Ct. at 1949; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. ___, 129 S.Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555).  "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."  *Id.* at 1950.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 570).  The plausibility standard requires showing "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations omitted).

**B.    Pro Se Litigants.**

Where a plaintiff appears pro se in a civil rights case, the court must construe the pleadings

---

[4]Unless otherwise noted, all references to "Rule" are to the Federal Rules of Civil Procedure.

liberally and afford the plaintiff any benefit of the doubt.  *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  In giving liberal interpretation to a pro se civil rights complaint, however, the court may not "supply essential elements of [a] claim that w[ere] not initially pled."  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a *pro se* civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies.  *Karim-Panahi*, 839 F.2d at 623-624.

## C.    Section 1983 Claims.

A § 1983 claimant must allege: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."  *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991).  To prevail, a claimant must prove that a person acting under color of state law committed the conduct at issue, and the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

A person subjects another to the deprivation of a constitutional right--within the meaning of § 1983--if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citations and quotations omitted).  Anyone who causes any citizen to be subjected to a constitutional deprivation is also liable.  *Id.*  The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others that the actor knows or reasonably should know would cause others to inflict the constitutional injury.  *Id.* at 743-744.  "The inquiry into causation must be individualized and focus on

the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  The "touchstone" for determining when a plaintiff shows that a defendant proximately caused the alleged violation of the plaintiff's rights is "foreseeability."  *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007).

### 1.   Supervisory Liability Under *Ashcroft v. Iqbal*.

The Supreme Court recently addressed--in a *Bivens* action contesting a prisoner's conditions of confinement--the Rule 8 pleading standard.  In *Iqbal*, the plaintiff filed a suit contesting his treatment while confined in an administrative maximum special housing unit.  The defendants included correctional officers with whom he had daily contact, wardens, and the officials in charge of federal law enforcement, namely, the former United States Attorney General (Ashcroft) and the Director of the Federal Bureau of Investigation (Mueller).  *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1943 (2009).  Ashcroft and Mueller moved to dismiss the complaint for failure to state a claim showing that they were involved in "clearly established unconstitutional conduct."  *Id.* at 1944.  The Court explained that there is no respondeat superior liability for government officials due to the actions of their subordinates.  *Id.* at 1948.  Consequently, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*  The Court rejected the plaintiff's argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution."  *Id.* at 1949.

In analyzing the claim, the Court first identified the following allegations as not being entitled to the presumption of truth:

- Ashcroft and Mueller "'knew of, condoned and willfully and maliciously agreed to subject [plaintiff]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penalogical interest.'"

- "Ashcroft was the 'principal architect' of this invidious policy."  *Id.*

- "Mueller was 'instrumental' in adopting and executing [the policy.]"

*Id.* at 1951.  The Court found that "[t]hese bare assertions . . . amount to nothing more than a 'formulaic

recitation of the elements' of a constitutional discrimination claim." *Id.* Consequently, the Court held they were not entitled to a presumption of truth. *Id.*

Next, the Court turned to the other factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* The plaintiff alleged:

- "[T]he [FBI], under the direction of Defendant Mueller, arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11.

- "The policy of holding post September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants Ashcroft and Mueller in 2001."

*Id.* at 1951. The Court found that these allegations, while *possible*, did not plausibly establish Ashcroft and Mueller's purposeful conduct to discriminate based on race, religion or national origin. At most, the Court found that the allegations suggested a more likely explanation, namely that Ashcroft and Mueller kept "suspected terrorists in the most secure conditions available" in the wake of a terrible terrorist attack. *Id.* By reason of this obvious alternate explanation, the Court found that the plaintiff needed to allege more factual content to carry his discrimination claim "'across the line from conceivable to plausible.'" *Id.* (citing *Twombly*, 550 U.S. at 570).

### 2.    Defendants' Liability.

The district judge already found that Plaintiff has adequately alleged claims against Defendants with respect to certain underlying claims. *See* March 30, 2009 Order, p.11. The court found that allegations of gross negligence against Defendants, based on their alleged "implementation and enforcement of law library policies that effectively denied plaintiff access to the courts," sufficiently pleaded an access to courts claim. *Id.* Defendants now ask the court to revisit that ruling in light of the Supreme Court's May 18, 2009 ruling in *Ashcroft v. Iqbal*.

The *Iqbal* ruling focused on two of the defendants named in the suit, Ashcroft and Mueller. Those defendants--the former U.S. Attorney General and the Director of the FBI--were at the highest level of federal law enforcement. The Court found that the cabinet-level officer and the high-ranking official could not be held personally liable for their subordinates' alleged unconstitutional acts based on supervisory liability. *See Iqbal*, 129 S. Ct. at 1956 (J. Souter, dissent) (explaining scope of majority's ruling on supervisory liability). Even though Mr. Iqbal alleged that Ashcroft and Mueller created,

1   adopted and implemented the policy that lead to his allegedly unconstitutional conditions of

2   confinement, those allegations were not enough to withstand a motion to dismiss by those defendants.

3   *Id.* at 1952.  Instead, the majority ruled that the plaintiff would need to allege facts that showed the

4   defendants purposefully adopted a policy that impinged on the plaintiff's constitutional rights.  *Id.*

5          Here, Plaintiff alleges that the current and former Directors of the CDCR violated his right to

6   access the courts and to equal protection because those Defendants: (1) limited his access to legal

7   materials by "promulgating, encouraging, enforcing and allowing policies, procedures and operations

8   that deny access to legal resources;" (2) were grossly negligent in their supervision and duty regarding

9   the CDCR's law libraries and inmates' abilities to access them; and (3) failed to supervise and provide

10  adequate training, funding and policy for the CDCR's law libraries.  4AC ¶¶ 70-71.  Applying *Iqbal*, the

11  first allegation is not entitled to a presumption of truth because it is conclusory and amounts "to nothing

12  more than a 'formulaic recitation of the elements' of a constitutional . . . claim."  *Id.* at 1951.  The

13  second and third allegations are insufficient to state a claim against the Directors because even if true,

14  they fail to allege the necessary knowledge and state of mind to establish that the Director Defendants

15  caused a violation of Plaintiff's right to access the courts.  The court, therefore, recommends that the

16  claims against the Directors be dismissed.  Further, the court recommends that this dismissal be with

17  prejudice.  As Plaintiff is already on his fifth complaint, if he could have alleged facts showing the

18  personal participation of the Directors, he should have done so by now.

19         This court applies *Iqbal* to the Director Defendants in this case because they are high-ranking

20  state government officials with a state level rank similar to the federal level of the *Iqbal* defendants.

21  The Director Defendants here have been or are currently in charge of the entire Department of

22  Corrections and Rehabilitation for the State of California.  In *Iqbal*, Ashcroft and Mueller were in

23  similar director-level positions for federal law enforcement and prosecution.  But the other Defendants

24  in this case--the Wardens, Associate Warden, Captains, Lieutenants and Library Staff--do not share a

25  similar high-level rank in law enforcement as do Ashcroft and Mueller in *Iqbal*.  Therefore, this court

26  will not recommend  the district judge reverse her previous ruling as to these Defendants.

27         The court **RECOMMENDS** that the motion to dismiss Director Defendants Cates, Tilton,

28  Woodford, Dovey and Hickman be **GRANTED** and that Plaintiff's claim against these Defendants be

1  **DISMISSED with prejudice**.  The court **FURTHER RECOMMENDS** that the motion to dismiss

2  Defendants Almager, Salazar, Giurbino, Gonzalez, Hernandez, Cortez, Napolitano, Kuzil-Ruan,

3  Denault, Darr, Grannis, Cullors, Pitones and Anchondo be **DENIED**.

4        **C.**      **Right to Access the Courts.**

5        Prisoners have a constitutional right of access to the courts under the first and fourteenth

6  amendments. *See Lewis v. Casey,* 518 U.S. 343, 346 (1996); *Vandelft v. Moses,* 31 F.3d 794, 796 (9th

7  Cir. 1994).  This right "requires prison authorities to assist inmates in the preparation and filing of

8  meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from

9  persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977); *see Madrid v. Gomez,* 190 F.3d

10  990, 995 (9th Cir. 1999).  The right does not guarantee a particular methodology.  *Lewis,* 518 U.S. at

11  356-357.  Rather, it confers a capability to challenge sentences or conditions of confinement before the

12  courts.  *Id.*  Prison officials have discretion to select the best method for prisoners to have the capability

13  to file suit.  *Id.* at 356.  The touchstone for determining an access to courts claim is whether the access is

14  meaningful.  *Id.* at 351.

15        The right of access is guaranteed for only certain types of claims: (1) direct and collateral attacks

16  upon a conviction or sentence; and (2) civil rights actions challenging the conditions of confinement.

17  *Lewis*, 518 U.S. at 354.  Prison officials who deliberately deny an inmate access to a legitimate means to

18  petition for redress of grievances may violate the prisoner's constitutionally protected right to access to

19  the courts. *Lewis,* 518 U.S. at 351-355; *Vandelft* 31 F.3d at 796.  To state a claim for denial of access to

20  the courts, a plaintiff must allege a specific actual injury involving a non-frivolous direct appeal, habeas

21  corpus proceeding or section 1983 action.  *See Lewis*, 518 U.S. at 351-352, 353 n.3, 353-355; *Madrid,*

22  190 F.3d at 995.

23        Regarding injury, there is no "abstract, freestanding right to a law library or legal assistance,

24  [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law

25  library or legal assistance program is subpar in some theoretical sense."  *Lewis*, 518 U.S. at 351.  The

26  inmate must go further and

27                  show for example, that a complaint he prepared was dismissed for failure
                   to satisfy some technical requirement which, because of deficiencies in the

28                  prison's legal assistance facilities, he could not have known. Or that he had
                   suffered arguably actionable harm that he wished to bring before the

1          courts, but was so stymied by inadequacies of the law library that he was
            unable even to file a complaint.

2  *Id.*

3        **1.     Claim Based on Direct Appeal.**

4        Here, Plaintiff alleges an access to courts claim based on his direct appeal. 4AC ¶ 58. He

5  alleges that the appeal contained only an insufficiency of evidence claim, and that Defendants prevented

6  Plaintiff from asserting 20 non-frivolous claims on appeal. *Id*; ¶ 57. But Plaintiff was represented by

7  counsel on appeal. 4AC ¶ 56, Claims 12, 20; ¶ 60; ¶ 64. The touchstone for determining whether a

8  plaintiff was impeded from accessing the courts is whether his right to access the courts was meaningful.

9  *Lewis,* 518 U.S. at 351. This court finds that representation by counsel provides meaningful access to

10  the courts because counsel acted on his behalf and provided that access. *See Entzi v. Redmann*, 485 F.3d

11  998 (8th Cir. 2007) (finding "any limitation on [plaintiff]'s access to the prison library did not deprive

12  him of access to the courts" on direct appeal because plaintiff was represented by counsel on direct

13  appeal). Therefore, this court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's access to

14  courts claim insofar as it is based on his direct appeal be **GRANTED**.

15        **2.     Claim Based on Nine Never-Filed Conditions of Confinement Claims.**

16        Plaintiff alleges Defendants prevented him from filing nine other § 1983 actions. 4AC ¶ 65.

17  Plaintiff never raised this issue in the initial complaint, FAC, SAC or TAC. Rather, he raised this issue

18  in his opposition to Defendants' motion to dismiss the TAC. In ruling on the motion to dismiss the

19  TAC, the district judge gave Plaintiff leave to file a 4AC where he could amend his forward looking

20  claims, and found that "[i]f the 4AC includes the same detailed allegations about the denial of library

21  access found in the TAC, then plaintiff will adequately plead the second prong of a forward-looking

22  claim for denial of access to the courts." Mar. 30, 2009 Order, p.17. Namely, the court found that

23  Plaintiff's allegations of

24          the limited hours of the law library, the frequency of lockdowns and
            modified programs that prevent plaintiff from accessing the law library,

25          the small amount of time that plaintiff can spend in the law library when
            he is granted access, and the deduction of time spent waiting for an escort,

26          and the conflict between accessing the law library and receiving visitors

27  were sufficient to withstand a motion to dismiss. *Id.* at 15, 17. The court found that if Plaintiff amended

28  his access to courts claim based on forward looking claims, the "only substantive issue for adjudication

at the motion to dismiss phase would be whether plaintiff's forward-looking claims are 'non-frivolous' and 'arguable.'" *Id.* at 17.  Now, Defendants move to dismiss Plaintiff's access to court claim based on these underlying never-brought § 1983 claims because Plaintiff does not adequately describe them as being non-frivolous.

Forward-looking claims allege "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).  In these cases that have yet to be litigated, "the justification for recognizing that [forward looking] claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*  As part of the requirement to plead an injury, a plaintiff must allege that "a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis,* 518 U.S. at 353; *see Christopher*, 536 U.S. at 415.  Simply stating that a claim is "nonfrivolous" due to the action of a government official will not satisfy the actual injury requirement. *Christopher*, 536 U.S. at 415.  Rather, the nonfrivolous "underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.  The plaintiff must describe this "predicate claim . . . well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.*  The complaint should "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-418; *see Lewis*, 518 U.S. at 353 n.3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value -- arguable claims are settled, bought and sold.  Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Rule 11 sanctions.").

Plaintiff alleges Defendants prevented him from bringing nine conditions of confinement claims. He describes the claims in paragraph 65 of the 4AC, as follows:

> (1) Centinela State Prison's and the CDCR's kitchens and food delivery systems are in violation of the Eighth Amendment and numerous California Health & Safety Codes resulting in Plaintiff's food poisoning.

> (2) The drinking water at Centinela State Prison, and probably in all of the CDCR, is in violation of the Eighth Amendment, California Health & Safety and Government Code and Clean Water Acts.

(3) CDCR cells now have computerized flush regulators that restrict flushes, in a small poorly ventilated two man cell, to two flushes per five minute interval. This violates the Eighth Amendment, California Health & Safety Code and California Building Code.

(4) Denial of medical care in violation of the Eighth Amendment and California state law. Plaintiff has a painful degenerative joint condition in his knee for which medical care was deliberately interfered with and denied.[5]

(5) Denial of medical care in violation of the Eighth Amendment and California state law. Centinela State Prison's medication refill procedures result in regular, forseeable [sic] and significant interruptions in prescription medications.

(6) Overcrowding of CDCR's prisons in violation of the Eighth Amendment.

(7) Eighth Amendment claim based on CDCR's policies of keeping level III and level IV inmates locked down for twenty four hours each day for up to and past a year in duration with no provision of fresh air, sunlight or recreation time.

(8) First Amendment retaliation claim regarding the actions of Centinela State Prison's administration and other personell [sic] in response to the instant civil rights complaint. This includes harassment and destruction of Plaintiff's legal mail.

(9) Eighth Amendment claim regarding CDCR's policies of allowing a maximum temperature to be "as close to 90° as possible." This allows untolerable temperatures, especially in cells, and it fails to account for the "heat index" which accounts for humidity and relative temperature. This failure to account for the "heat index" forces inmates to live in relative temperatures that, despite registering at 90°, actually give the experience of temperatures well into the hundreds.

Looking at these nine claims, Plaintiff describes each one in only general terms. His allegations do not comport with the *Christopher* requirement that Plaintiff describe those claims with enough particularity to comply with Rule 8. Under the standard set forth in *Iqbal*, Plaintiff fails to meet the Rule 8 pleading requirements. His allegations are conclusory and fail to give fair notice to the Defendants about the underlying claims and remedies sought. Except for claims 1 and 4, Plaintiff does not allege any injury to himself. It is unclear whether Plaintiff even has standing to bring the other claims. Further, he does not allege any facts to show that any of the Defendants acted with deliberate indifference to any of his medical needs. Further, Plaintiff's claims appear more "hopeful" than

---

[5]The court notes that Plaintiff has successfully brought a separate § 1983 action in this court for deliberate indifference to medical needs. *See Bovarie v. Schwarzenegger*, 08cv1661 LAB (NLS).

"arguable" in that they largely complain about the discomforts of prison life, which complaints are not actionable. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("the Constitution does not mandate comfortable prisons, and prisons . . . cannot be free of discomfort").  In sum, while these underlying claims may be *possible*, they do not provide enough facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  Because these facts appear "merely consistent with a defendant's liability, [they stop] short of the line between possibility and plausibility of entitlement to relief." *Id.*

For these reasons, this court **RECOMMENDS** that Defendants' motion to dismiss the access to courts claim based on the underlying, never-filed, § 1983 conditions of confinement claims be **GRANTED**.  Because Plaintiff was previously advised of the shortcomings of his allegations and given leave to amend them, this court **FURTHER RECOMMENDS** that his access to courts claim based on these underlying claims be **DISMISSED with prejudice**.

## IV. Sua Sponte Dismissal.

### A. Authority to Sua Sponte Review the 4AC for Frivolous Claims.

The Prison Litigation Reform Act's (PLRA's) amendments to 28 U.S.C. § 1915 obligate the Court to review complaints filed by all persons proceeding in forma pauperis and by those, like Plaintiff, who are "incarcerated or detained in any facility [and]  accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing."  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Under these provisions, the court must sua sponte dismiss any prisoner civil action, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Resnick v. Hayes*, 213 F.3d 443, 446 n.1 (9th Cir. 2000) (§ 1915A).

Here, Plaintiff has included brand-new claims in his 4AC that have not yet been screened.  The court now sua sponte screens these claims to determine whether they are survive § 1915 review.

### B. Equal Protection Claim.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny

to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To assert a valid equal protection claim plaintiffs must allege (1) they are a member of a protected class, (2) facts sufficient to show defendants treated them differently from other similarly situated persons, and (3) defendants acted with an intent or purpose to discriminate against the plaintiffs based on their membership in the protected class.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 428 U.S. 242, 265 (1977); *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).

Here, Plaintiff peppers the 4AC with the allegation that his "right to equal protection of the law" has been violated.  But Plaintiff does not allege he is a member of any protected class.  And he does not allege any facts to show that Defendants treated him differently from other similarly situated persons.  In fact, Plaintiff complains about the general policies and procedures for the Centinela and Avenal prison law libraries, which extend to all members of the prison population.  Because Plaintiff's overarching claim is about an institutional policy that applies to all inmates, even if given leave to amend, Plaintiff cannot rework his complaint to allege that he is being treated differently from other similarly situated persons.  Because Plaintiff fails to allege any element of an equal protection claim, and granting him leave to amend would be futile, this court **RECOMMENDS** that his equal protection claim be **DISMISSED with prejudice**.

## V.    Summary of Remaining Claims.

Given the lengthy procedural history in this case, advice to Plaintiff about the shortcomings in his allegations and Plaintiff's consequent failure to properly amend some of those allegations, this court recommends that the district court order this case to proceed on the allegations it deems sufficient in the 4AC.  Because Plaintiff's complaint has been through so many iterations, so many different portions of it have been dismissed, and certain portions have been re-filed, this court finds it worthwhile to summarize--based on the recommendations in this order--what would remain at issue in the 4AC if this Report and Recommendation is adopted.

Based on the district judge's March 30, 2009 ruling on Defendants' motion to dismiss the TAC, the court found that Plaintiff stated a backward-looking access to courts claim based on his prior § 1983

22

06cv687 JLS (NLS)

1  action dismissed for failure to exhaust.  The court granted Plaintiff leave to amend his complaint to

2  include other backward-looking claims based on claims not otherwise included in his direct appeal and

3  state and federal habeas petitions.  Plaintiff included those 20 underlying backward-looking claims in

4  the 4AC.  Except for the claims based on the direct appeal, Defendants did not move to dismiss those

5  backward-looking claims.  Those claims, therefore, remain in the 4AC at this time.  Based on the

6  recommendations in this order, those backward looking claims--based on Plaintiff's state and federal

7  habeas petitions and petition for review of the direct appeal, as well as the claim based on the prior §

8  1983 action--survive against only Defendants Smelosky, Almager, Salazar, Giurbino, Gonzalez,

9  Hernandez, Cortez, Napolitano, Kuzil-Ruan, Denault, Darr, Grannis, Cullors, Pitones and Anchondo.

10  Plaintiff can only seek money damages against those Defendants to the extent they are sued in their

11  individual capacities.

### CONCLUSION

12

13      For all of the above reasons, the Court **RECOMMENDS** the following disposition with regard

14  to Defendants' motion to dismiss:

15      1.   **GRANTED** as to Plaintiff's claims for money damages to the extent Defendants are sued

16           in their official capacities.

17      2.   **DENIED as moot** as to dismissal of Steinhaus because Plaintiff did not name him as a

18           defendant in the 4AC.

19      3.   **GRANTED** as to Defendants Cates, Tilton, Woodford, Dovey and Hickman, and that

20           Plaintiff's claims against those Defendants be **DISMISSED with prejudice**.

21      4.   **DENIED** as to Defendants Almager, Salazar, Giurbino, Gonzalez, Hernandez,

22           Cortez, Napolitano, Kuzil-Ruan, Denault, Darr, Grannis, Cullors, Pitones and Anchondo.

23      5.   **GRANTED** with respect to Plaintiff's access to courts claim insofar as it is based on his

24           direct appeal, and that the claim be **DISMISSED with prejudice**.

25      6.   **GRANTED** with respect to Plaintiff's access to courts claim insofar as it is based on the

26           underlying, never-filed, § 1983 conditions of confinement claims, and that the claims be

27           **DISMISSED with prejudice**.

28      7.   The court **FURTHER RECOMMENDS** that Plaintiff's equal protection claim be

06cv687 JLS (NLS)

**DISMISSED with prejudice**.

8.      If this Report and Recommendation is adopted, that the remaining Defendants be ordered to file an answer to the remaining claims within 20 days of the district judge's order.

This report and recommendation of the undersigned Magistrate Judge is submitted pursuant to 28 U.S.C. § 636(b)(1)  to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than ***November 13, 2009*** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than ***November 23, 2009.***  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  October 22, 2009

_Nita L. Stormes_
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court

06cv687 JLS (NLS)